UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DAWN CRAWFORD, In her Capacity as Administratrix of the Estate of Marc Crawford, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:18-CV-623-CHB |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| JOHN TILLEY, et al., | ) ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff's Motion Seeking Leave to File Amended Complaint ("Motion to Amend Complaint") [R. 32]; various Motions to Dismiss filed by Defendant Correct Care Solutions [R. 11], Defendants Kristie Proctor, Janice Garth, and Sheridan Thomas [R. 20], and Defendant James Erwin [R. 21]; and Plaintiff's Motions Seeking Reissuance/Amendment of Summonses [R. 41; 42].  Briefing is complete on the various Motions. [R. 33–38, 40]  Thus, these matters are ripe for review.  For the reasons stated herein, Plaintiff's Motion to Amend Complaint is **GRANTED in PART and DENIED in PART**; the Defendants' Motions to Dismiss are **DENIED as MOOT**; and Plaintiff's Motions Seeking Reissuance/Amendment of Summonses are **GRANTED**.

## I.    Background Facts

This matter arises from claims brought by Dawn Crawford ("Plaintiff" or "Dawn"), in her capacity as administratrix of the estate of her former husband, Marc Crawford ("Marc"), who died on June 24, 2017, while in custody at the Kentucky State Reformatory ("KSR"). [R. 32-1 ¶

1

10]  Dawn Crawford was appointed as administratrix of Marc Crawford's estate on November 22, 2017, by order of the Madison County District Court. [*Id.*]

On May 25, 2017, Marc Crawford was arrested and taken to the Madison County Detention Center ("MCDC"). [*Id.* ¶¶ 59, 62]  This was not the first time Marc had been detained in MCDC; in September 2016, he was detained and allegedly subjected to abuse from MCDC and its employees. [*Id.* ¶¶ 53−58]  In the 2016 incident, Marc was held in a restraint chair for hours without justification, forcing him to urinate on himself. [*Id.* ¶ 54]  When Marc attempted to obtain video footage or other records of the incident from MCDC, he was told that he should leave or he would be arrested for inquiring about the records. [*Id.* ¶ 56]  Marc filed an open records request to which MCDC failed to respond. [*Id.* ¶ 57]  The Kentucky Attorney General found that MCDC violated Kentucky's Open Records Act by ignoring Marc's request. [*Id.* ¶ 58]

Upon Marc's 2017 arrest, his wife Dawn informed the arresting officers that Marc was ill and had just been released from the hospital with complications arising from lung cancer (including a stint placed in his kidney). [*Id.* ¶¶ 1, 60]  Per Plaintiff, Marc's leg was also swelling and cool to the touch, and Dawn informed the officers that she had been about to take Marc back to the hospital. [*Id.*]  Dawn called 911 to make sure Marc would receive care for his leg, but the arresting officers informed her that they would take Marc to the hospital before taking him to jail, so Dawn cancelled her 911 call. [*Id.* ¶ 61]  However, the arresting officers did not take Marc to the hospital, but instead took him to MCDC. [*Id.* ¶ 62]  At MCDC, Marc was kept in isolation and did not receive medical care for his leg, which was developing a blood clot, or his other medical conditions. [*Id.* ¶¶ 63−64]  According to the Amended Complaint, MCDC staff subjected Marc to brutal treatment, including several assaults. [*Id.* ¶¶ 64−77]  MCDC medical staff also denied Marc his prescribed medications, placed him on inappropriate psychoactive

medications, would not allow him to have his previously scheduled oncology appointments for his cancer treatment, and then falsified medication records to cover up their actions. [*Id.*]

On May 31, 2017, Marc was transferred to KSR. [*Id.* ¶ 78]  Marc's treatment at KSR is the basis for the three motions to dismiss before the Court.  Defendant Correct Care Solutions, LLC ("CCS") is a contracted healthcare provider for inmates at KSR. [*Id.* ¶ 20]  Plaintiff states that Defendants Proctor, Garth, and Thomas were all medical staff of KSR and/or Correct Care Solutions. [*Id.* ¶¶ 21]  Defendant James Erwin was the acting Commissioner of the Kentucky Department of Corrections at the time, and made the decision to accept Marc to KSR. [*Id.* ¶¶ 12, 97]

KSR medical staff did not refer Marc to be treated by an oncologist until June 20, 2017 (three weeks after Marc's arrival at KSR), and Defendant Garth scheduled the appointment for July 5. [*Id.* ¶ 81]  Plaintiff asserts that this delay occurred because KSR either had no policy requiring oncology consults and referrals for inmates with cancer, or that Defendant Garth ignored this policy. [*Id.* ¶ 88]  Plaintiff claims that the medical staff at KSR, including Defendants CCS, Proctor, Garth, and Thomas, refused to give Marc his prescribed narcotic medication and provided inadequate dosages of pain medication. [*Id.* ¶ 80]  She also claims that the same Defendants refused to provide Marc chemotherapy as prescribed by his oncologist prior to incarceration. [*Id.* ¶ 79]

Two days after Marc's transfer to KSR, Defendant Thomas examined him. [*Id.* ¶ 86] During this examination Marc complained about the pain in his leg, and medical records showed that he had an identified blood clot in his leg at the time. [*Id.*]  Nevertheless, Thomas failed to assess his leg or review these records. [*Id.*]  Defendant Proctor signed off on Marc's medical charts but did not administer several of the medications that were prescribed, including Tylenol

3

with codeine, Norco, Zosyn, Colace, and Coumadin (a blood thinner). [*Id.* ¶ 87]  Defendant

Garth, one of Marc's medical providers at the time, noticed the blood clot on June 20, 2017 (four

days before Marc's death). [*Id.* ¶ 89]  However, she did not take any measures to follow up on

the clot. [*Id.*]  Marc died four days later [*Id.* ¶ 83] and had 3 liters of fluid in his lungs, which

may have been caused by the blood clot in his leg breaking and flowing into his heart and lungs.

[*Id.* ¶¶ 90, 94]  In fact, Marc was prescribed Ipratropium to relax the muscles around his airways

to allow him to breathe. [*Id.* ¶ 91]  However, despite this prescription, Plaintiff claims no one at

KSR or CCS ever administered Ipratropium to Marc. [*Id.* ¶ 92]  As a result, no one ever checked

the condition of Marc's lungs despite his elevated heart rate and self-reported symptoms, or

requests from his pre-incarceration physician, attorney, and family members. [*Id.* ¶ 93, 95]  No

one from KSR or CCS informed Dawn Crawford that her husband had died until two days after

his death. [*Id.* ¶ 84]

On November 26, 2018, Plaintiff filed her Complaint through then-counsel Michael

Barnett, alleging claims under 42 U.S.C. § 1983 and other state law claims. [R. 1]  Plaintiff took

no action regarding her case for nine months until the Court ordered her to show cause for why

she had not effected service of process. [R. 4 (dated August 12, 2019)]  In his response to the

Court's show cause order, counsel Barnett stated that he had no intention of litigating the case

and only agreed to file it for Plaintiff because the statute of limitations was approaching. [R. 5

(dated August 26, 2019)]  Barnett also requested to withdraw as counsel. [R. 6]  The Court

denied his request and admonished counsel for filing an action that he had no intention of

advocating. [R. 7]  The Court also ordered Plaintiff to serve the Defendants in this case within

forty-five days of the order. [*Id.* p. 3]  On October 11, 2019, Plaintiff's counsel filed notice that

he had complied with the Court's order. [R. 10]  However, the notice did not reflect service of

process since it was missing an affidavit as required by Fed. R. Civ. P. 4(l) (although the fact that one Defendant had filed a motion to dismiss and several others had filed answers indicated that Plaintiff had in fact served at least those Defendants). [R. 14]  In response to the Court's order, Plaintiff, through counsel, filed a second notice on November 12, 2019. [R. 18; 19]

Meanwhile, on October 23, 2019, Defendant CCS filed a motion to dismiss. [R. 11] Defendants Proctor, Garth, and Thomas filed a motion to dismiss on November 25, 2019. [R. 20] Finally, on January 3, 2020, Defendant Erwin, in his individual capacity, filed a motion to dismiss. [R. 21]  Plaintiff did not timely respond to any of the motions to dismiss.  On February 12, 2020, Plaintiff secured new counsel who filed a motion seeking a thirty-day extension to respond to the three motions to dismiss. [R. 24]  In its discretion, the Court granted this request. [R. 30]

Plaintiff then filed her Motion to Amend Complaint [R. 32], and responded to Defendants' Motions to Dismiss. [R. 33]  Plaintiff's Amended Complaint asserts the same state law claims for wrongful death [*Id.* ¶¶ 102–105] and negligence [*Id.* ¶¶ 133–138] as her original Complaint.  Like her first Complaint, Plaintiff also brings claims under 42 U.S.C. § 1983 for various violations under the Eighth Amendment. *Compare*, [R. 1 ¶¶ 53–63], *with* [R. 32-1 ¶¶ 106–132].  Her Amended Complaint clarifies her particular claims against each Defendant under the Eighth Amendment and adds additional facts supporting her claims.  Defendants oppose Plaintiff's Motion to Amend Complaint. [R. 35; 37; 38]

## II.     Plaintiff's Motion for Leave to File an Amended Complaint

### A.     Legal Standards for Amendment and Dismissal

A party may amend its complaint once as a matter of course within twenty-one days after serving it, or within twenty-one days after service of a responsive pleading or motion under Rule

5

12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The goal of the rule is that "cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1968); *see also Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Consequently, the Sixth Circuit is "very liberal" in allowing amendments to a complaint. *Northwestern Nat. Ins. Co. of Milwaukee v. Joslyn*, 53 F.3d 331 (Table), at *6 (6th Cir. 1995) (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)); *see also Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016).

"In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005); *see also Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).  "Delay by itself is not sufficient reason to deny a motion to amend." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).  While ordinary delay does not usually justify denying leave to amend a complaint, "at some point 'delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" *TIG Ins. Co. v. Hospital Corp. of America*, 2014 WL 3118863, at *7 (W.D. Ky. July 7, 2014) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). However, denying leave to amend a complaint solely based on delay requires "at least some significant showing of prejudice." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007)

(citing *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam)).  The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion. *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995).

Further, when an amended complaint would be futile, a court need not grant leave to amend. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).  To determine if an amendment is futile, the Court must "conduct a cursory review of the newly presented allegations and issues."  *Flinn v. R.M.D. Corp.,* No. 3:11-CV-00386-H, 2012 WL 694037, at *2 (W.D. Ky. Mar. 1, 2012).  An amendment is futile when the proposed amended complaint would not survive a motion to dismiss. *Kyrkanides v. University of Kentucky*, No. 5:19-cv-080-REW, 2019 WL 6135049, at *3 (E.D. Ky. Nov. 19, 2019) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

B.     **Analysis**

1.     **Rule 15(a)(2) Analysis**

Plaintiff argues that Rule 15's liberal amendment policy should allow her to amend her Complaint.  She claims that allowing an amendment "will not prejudice the Defendants in any way" because the litigation is still in an early stage, she has not added any new claims (but rather clarified existing claims), and Defendants have been aware all along of the general nature of the claims. [R. 32 p. 2]  She also argues that there is no undue delay, bad faith, or dilatory motive on her part.  Defendants disagree, arguing that there has been undue delay and allowing the amendment would unduly prejudice the Defendants. *See* [R. 35, 37, 38]

In this case, multiple factors weigh in favor of allowing Plaintiff to amend her Complaint, particularly in light of Rule 15's mandate that leave should be freely given.  Although failure to effect service in this case caused months of delay, allowing Plaintiff to amend her Complaint will have a minimal impact on the judicial proceedings given the stage of the litigation.  No discovery has taken place, and the Court has not even entered a scheduling order.  This is also not a case where Plaintiff has been given previous opportunities to amend her Complaint but failed to cure deficiencies; this is Plaintiff's first motion to amend.  The delay in this case was caused by Plaintiff's former counsel, who initially failed to tender summons or effectuate service of process, and then failed to respond to Defendants' motions to dismiss (or even inform Plaintiff that motions to dismiss had been filed).  Once Plaintiff became aware that her counsel was failing to take action with respect to her case, Plaintiff retained her current counsel who has been timely in her actions.  Given these facts, Plaintiff did not unduly delay in filing her Amended Complaint. *See Mersen USA—Midland—MI Inc. v. Graphite Machining Servs. & Innovations*, LLC, No. 12-10961, 2012 WL 3060922, at *2 (E.D. Mich. July 26, 2012) ("Undue delay is

typically found where years have passed, discovery has been substantially conducted, and dispositive motion deadlines have passed.").

Defendants argue that allowing Plaintiff to amend her Complaint would unduly prejudice them given the length of delay. Some of the Defendants argue that the delay prevented them from gathering relevant evidence. *See* [R. 35 p. 4 (Defendants CCS, Proctor, Garth, and Thomas); R. 38 p. 5 (Defendant Erwin)] Yet Defendants' claims are speculative. They do not identify any actual (or even potential) evidence that has been lost. Nor do they identify with any specificity *how* they have been prejudiced by this delay. This hypothetical prejudice is not sufficient to outweigh the liberal amendment policy endorsed by Fed. R. Civ. P. 15 and the Sixth Circuit, or the preference that claims be evaluated on their merits. As the Court articulated, discovery has not even commenced, and the Amended Complaint contains essentially the same claims as her original Complaint (but contains more specific factual allegations). The Court finds that Defendants will not be prejudiced by the amendment. *See, e.g.*, *Basham v. BAE Systems Land and Armaments L.P.,* No. 3:18-CV-808-RGJ, 2019 WL 6898670, at *3–4 (W.D. Ky. Dec. 18, 2019). Moreover, Defendant has not established that Plaintiff acted in bad faith, and Defendants have all had notice of this lawsuit.

Finally, Defendants argue that amendment would be futile because some claims are time-barred and others, even after amendment, would not survive a motion to dismiss. As outlined below, except with respect to Plaintiff's state law claims and official capacity claims, the Motion to Amend Compliant is not futile. Accordingly, the Court will exercise its discretion and allow amendment except with respect to these claims.[1]

---

[1] Because the Court is permitting Plaintiff to amend her Complaint, as outlined herein, the Amended Complaint will replace the allegations in the original Complaint. As a result, the Motions to Dismiss [R. 11, 20, 21] are denied as moot. *See Hull v. Rawlings Co., LLC*, No. 3:18-cv-00772, 2019 WL 1767893, at *2 (W.D. Ky. April 22, 2019); *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors*

## 2.    Plaintiff's State Law Claims Are Time-Barred

Defendant Erwin claims that Plaintiff's Amended Complaint is futile because her claims are barred by their respective statutes of limitations. [R. 21 pp. 12–13, R. 38 pp. 4–5]  Plaintiff's state law negligence and wrongful death claims are subject to a one-year statute of limitations provided in KRS § 413.140(1)(a).[2] *Mulaosmanovic v. Warren Cty*, NO. 1:17-CV-00169-GNS, 2018 WL 1309992, at *2 (W.D. Ky. 2008) (citing *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)); *Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 653–54 (Ky. 1992) (applying § 413.140 to wrongful death actions).  The statute of limitations for these claims began to run on November 22, 2017, the day that Marc's personal representative was appointed. KRS § 413.180(1).  Therefore, Plaintiff must have brought, or commenced, her claims by November 23, 2018 to satisfy the statute of limitations.

Kentucky law determines when Plaintiff's state law claims commenced. *Bradford v. Bracken Cty*, 767 F. Supp. 2d 740, 745–46 (E.D. Ky. 2011); *Davis v. Bishop*, No. 5:12–CV–272–KKC, 2013 WL 5350520, at *3 (E.D. Ky. Sept. 23, 2013) (citing *Eades v. Clark Distrib. Co., Inc.*, 70 F.3d 441 (6th Cir. 1995)).  Under Kentucky law, "[a]n action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." KRS § 413.250; *see also Steadman v. Gentry*, 314 S.W.3d 760, 762 (Ky. App. 2010) ("the statute of limitations runs until a summons is actually issued"). Defendant Erwin argues that Plaintiff's claims are barred because regardless of when she filed her Complaint, Plaintiff did not cause summons to be issued until after the statute of limitations

---

*of Michi., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)); *see also* 6 C. Wright & Miller, Federal Practice & Procedure, § 1476, (2d. ed. 1990 & Supp. 2001).

[2] Plaintiff does not dispute that a one-year statute of limitations is applicable to her claims nor does she address the merits of Defendant's argument. [R. 33 p. 2]

expired. [R. 21 p. 13]  The Court agrees.  Though Plaintiff filed her Complaint on November 26, 2018, she did not request an issuance of summons until September 20, 2019, long after the one-year statute of limitations had expired. [R. 8; 9]  Therefore, Plaintiff's state court claims against Defendant Erwin must be dismissed as untimely.

Although Defendant Erwin was the only defendant to raise a statute of limitations defense, when a defense is clear from the face of the complaint, the Court may raise it *sua sponte*. *Alston v. Tenn. Dept. of Corrections*, 28 F. App'x 475, 476 (6th Cir. Jan 28, 2002) (if obvious by complaint); *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. June 20, 2002); *Pierce v. Oakland Cty*, 652 F.2d 671, 672 (6th Cir. 1981) (per curium).  Defendant Erwin specifically raised this issue in his Motion to Dismiss. [R. 21 p. 13]  This makes raising the defense *sua sponte* with respect to other defendants even less troublesome given that Plaintiff had sufficient notice to respond to the argument, but did not. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 724 n.7 (6th Cir. 2004) (holding that one defendant raising a statute of limitations defense "gave Plaintiffs sufficient notice of the viability of this issue" with respect to other defendants); *see also Thomas v. Mahoning Cty Jail*, No. 16–3495, 2017 WL 3597428, at *2 (6th Cir. March 21, 2017).  Plaintiff's state law claims against **all Defendants** are time-barred and amendment would be futile.  Therefore, the Court will not permit Plaintiff's state law claims to proceed.

### 3.       Plaintiff's § 1983 Claims Are Not Time-Barred

Defendant Erwin also argues that Plaintiff's federal claims are untimely.  Kentucky's one-year statute of limitations also applies to Plaintiff's § 1983 claims. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *Owens v. Okure*, 488 U.S. 235, 240 (1989).  Unlike her state claims, Plaintiff's federal claims commenced on November 26, 2018, the day she filed

11

her initial Complaint. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *see also Macon v. ITT Continental Baking Co., Inc.*, 779 F.2d 1166, 1172 (6th Cir. 1985) (holding that Fed. R. Civ. P. 3 governs when a § 1983 claim commences rather than state law).  Plaintiff argues that while the statute of limitations began to run on November 22, 2017, it did not expire on November 23, 2018 because that was the day after Thanksgiving, a Court-recognized holiday. [R. 33 p. 2]

Fed. R. Civ. P. 6(a) provides that if a deadline ends on a "Saturday, Sunday, or legal holiday, the [deadline] continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).  Therefore, if the Friday after Thanksgiving was a legal holiday, the statute of limitations for Plaintiff's federal claims would not have expired until Monday, November 26, 2018, the day she filed her Complaint.  The Rules provide that a "legal holiday" includes, "for periods that are measured after an event, any other day declared a holiday by the state where the district court is located." Fed. R. Civ. P. 6(a)(6). Kentucky defines the day after Thanksgiving a state holiday, and thus it is a legal holiday for purposes of calculating the statute of limitations for Plaintiff's federal claims. *See, e.g.*, https://personnel.ky.gov/Pages/Leave.aspx.  Therefore, Plaintiff's federal claims are not time-barred, and her Amended Complaint is not futile in this respect.

### 4.   Plaintiff's § 1983 Claims Are Not Otherwise Futile, Except Her Official Capacity Claims Are Futile

Finally, some of the Defendants make under-developed arguments that the Amended Complaint is futile because it would not withstand a motion to dismiss. *See* [R. 35 p. 5 n.2 (Defendants CCS, Proctor, Garth and Thomas); 38 p. 6 n.3 (Erwin)]  A proposed amendment is futile if it would not survive a motion to dismiss. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).  Here, based on a cursory review of the § 1983 claims, and with the exception of her

official capacity claims, Plaintiff's Amended Complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, with respect to Plaintiff's official capacity claims, the Court finds such claims are futile.  Plaintiff's Amended Complaint names all Defendants in their official and individual capacities. [R. 32-1 p. 32]  An "official capacity" claim against a state officer is, as a matter of law, a claim directly against the employing state agency. *Lambert v. Hartman*, 517 F.3d 433, 439–40 (6th Cir. 2008); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . generally represent [] another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Consequently, "when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim." *Thorpe ex rel. D.T. v. Breathitt Cty. Bd. Of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) (citing *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996)).  Plaintiff's official capacity claims would not survive a motion to dismiss and consequently, amendment would be futile.  Therefore, the Court will not permit Plaintiff to proceed with her official capacity claims.

### i.      Cruel and Unusual Punishment Under the Eighth Amendment with Respect to Defendants Proctor, Garth, and Thomas[3]

The Eighth Amendment requires states to "provide medical care for those whom it is punishing by incarceration." *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 552 (6th Cir. Aug. 13, 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  A prison official who acts with "deliberate indifference" to a prisoner's medical needs violates the Eighth Amendment.

---

[3] While § 1983 requires that a plaintiff prove that each defendant was a state actor at the time of the alleged constitutional violation, none of the Defendants have raised this as a defense.  In fact, Defendant CCS has largely conceded that it was a state actor. [R. 11 pp. 3–4]  Therefore, Defendants are presumed to be state actors for purposes of resolving the motions before the Court.

*Id.* Deliberate indifference involves an objective and subjective analysis. The objective component "requires that the inmate have a sufficiently serious medical need such that she is incarcerated under conditions posing a substantial risk of serious harm." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). To be sufficiently serious, a medical need must one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotations omitted). If the medical need is diagnosed, the objective component is satisfied if the prison "failed to provide treatment or that it provided treatment so cursory as to amount to no treatment at all." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (internal quotations omitted).

The subjective component requires showing that the defendant officer had a sufficiently culpable state of mind in denying medical care to the plaintiff. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). Deliberate indifference is more than mere negligence but does not require a showing of intent. *Id.* Instead the standard resembles criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). The plaintiff must show that the defendant officer "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *North v. Cuyahoga Cty*, 754 F. App'x 380, 385 (6th Cir. 2018) (quoting *Phillips v. Roane Cty*, 534 F.3d 531, 540 (6th Cir. 2008)).

Defendants briefly assert that Plaintiff's claims against them should be dismissed because her Amended Complaint is futile. [R. 35 p. 5 n.2] Defendants claim that the Amended Complaint is a "mere disagreement with a medical judgment, not an unconstitutional denial of adequate medical care," because they provided Marc *some* pain medication. [*Id.*] This entirely

14

ignores Plaintiff's claims that Marc was completely denied oncology treatment for his lung cancer, as well as several other (non-pain related) medications that were prescribed to him but never administered. *See, e.g.*, [R. 32-1 ¶¶ 79, 87, 91–92]  Based on a cursory review of Plaintiff's Amended Complaint, Plaintiff has alleged sufficient facts to support her claim that Defendants Proctor, Garth, and Thomas were deliberately indifferent to Marc's medical needs. At this stage, these claims do not appear futile. *See Flinn v. R.M.D. Corp.*. No. 3:11-CV-00386-H, 2012 WL 694037, at *2 (W.D. Ky. Mar. 1, 2012); *Basham v. BAE Systems Land and Armaments L.P.,* No. 3:18-CV-808-RGJ, 2019 WL 6898670, at *4 (W.D. Ky. Dec. 18, 2019).

### ii.    Supervisory Liability with Respect to Defendant Erwin

In his Motion to Dismiss, Erwin argues that Plaintiff's original Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because there were insufficient facts to state a plausible claim against him. [R. 21 pp. 5–11]  Specifically, he argues that the original Complaint did not contain facts that implicated him. [R. 21 p. 12]  Erwin maintains this argument in his Response in opposition to Plaintiff's Motion to Amend Complaint in which he briefly suggests that Plaintiff's Amended Complaint is futile. [R. 38 p. 6 n.3 ("Erwin disputes that any of these new allegations are sufficient to state a claim against him.")]  He also claims that he is entitled to qualified immunity for the same reason. [*Id.* pp. 11–12]  Qualified immunity protects officials from suit as long as their actions do not violate "clearly established" statutory or constitutional rights that a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether a government official is entitled to qualified immunity, courts make two inquiries: "first, viewing the facts in the light most favorable to the plaintiff, do the facts alleged show that the officer's conduct violated a constitutional right? Second, was the right

clearly established at the time of the violation?" *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (internal quotations omitted).

With respect to the first question, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross*, 818 F.3d at 241.  The Supreme Court clarified in *Ashcroft v. Iqbal*, "the term supervisory liability is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Essex v. Cty. of Livingston*, 518 F. App'x. 351, 355 (6th Cir. 2013) ("There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury.").  Consequently, supervisory liability requires "active" unconstitutional behavior on the part of the supervisor. *Peatross*, 818 F.3d at 241. "Active" behavior includes encouraging or otherwise condoning unconstitutional behavior of subordinates. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).  "[A]t a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242. Relevant to this inquiry is whether there is a causal connection between the defendant's wrongful conduct and the violation alleged. *Id.*  The second inquiry for qualified immunity requires the right Plaintiff claims was violated be clearly established at the time of violation.  For supervisory liability, this is an inquiry into the right the subordinate officers purportedly violated. *Id.* at 245.

A cursory review of Plaintiff's Amended Complaint reveals sufficient facts to state a plausible claim of supervisory liability against Defendant Erwin, and to show that qualified immunity is not appropriate at this stage.  Plaintiff states that Erwin helped promulgate the policies, practices, procedures, and customs for the Kentucky Department of Corrections,

including staffing decisions. [R. 32-1 ¶¶ 12, 22, 29–52, 97–101]  Plaintiff claims these policies (endorsed by Erwin) caused a systemic failure to provide constitutionally adequate healthcare for inmates, including Marc. [*Id.* ¶¶ 100, 101, 116–123]  According to Plaintiff, Erwin was aware that these policies resulted in constitutionally deficient medical care, yet did nothing to correct them. [*Id.* ¶¶ 41]  Plaintiff plausibly claims that Erwin knowingly acquiesced to the unconstitutional conduct of his subordinates, and that this led to the violation of Marc's Eighth Amendment Rights. *See Peatross*, 818 F.3d at 243–245.  Defendant has not argued that Marc's Eighth Amendment right against deliberate indifference to his medical needs is not clearly established.  Prisoners have a clearly established right to receive treatment for a serious medical need. *See Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 560 (6th Cir. 2014) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005)).

Based on these allegations, the Court can "draw the reasonable inference" that Erwin is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *See Fleming v. Tinnell*, RGJ 3:19-CV-125, 2020 WL 1268348, at *3–4 (W.D. Ky. Mar. 16, 2020) (citing *Buddenberg v. Weisdack*, 939 F.3d 732, 738–39 (6th Cir. 2019)).  It is premature to determine whether Erwin is entitled to qualified immunity.  Therefore, Plaintiff's Amended Complaint is not futile with respect to Defendant Erwin.

### iii.     Municipal Liability with Respect to Correct Care Solutions

Municipalities are not liable under § 1983 under theories of respondeat superior. *Ford v. Cty of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  This is equally applicable for private companies performing governmental functions. *Reed-Bey v. Pramstaller*, 607 F. App'x 445, 450 (6th Cir. 2015);

*Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).  Instead, these entities are only liable for "acts that may fairly be said to represent official policy or by their policies or customs." *North v. Cuyahoga Cty*, 754 F. App'x 380, 386 (6th Cir. 2018).  A "policy" is one that is promulgated by the official vested with final policymaking authority." *Miller v. Calhoun Cty*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986)).  By contrast, a "custom" can be established "by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).  In addition to identifying the policy or custom, a plaintiff must demonstrate a "direct causal link" between that policy or custom and the denial or his or her medical care. *Ford*, 535 F.3d at 497.

Correct Care Solutions is a private corporation that was contracted to provide healthcare for inmates at KSR. [R. 32-1 ¶¶ 8, 20]  Consequently, it may only be held liable under a theory of municipal liability for policies or customs that are directly linked to the constitutional violation. *Ford*, 535 F.3d at 495–97; *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Plaintiff's Amended Complaint asserts that CCS promulgated and applied policies related to the medical care of inmates that were directly linked to Marc's death. [R. 32-1 ¶¶ 29–52, 99–101, 124–132]  Plaintiff alleges that CCS had a custom of failing to adequately protect inmates from harm and serious risk from staff, and failing to provide inmates with adequate medical and mental health care.  This includes failing to provide evaluation of needs and treatments for incoming patients with cancer diagnoses. [*Id.* ¶ 88]  She also claims that CCS's policies of employing the least experienced medical staff possible (ostensibly to save money) resulted in a systemic failure which created the situation where its staff could miss Marc's medical problems and fail to administer prescribed medication.  Based on a cursory review of the requirements for

bringing such a claim and the allegations set out in the Amend Complaint, Plaintiff has alleged

facts sufficient to pursue this claim and therefore the amendment is not futile. *See Flinn v.*

*R.M.D. Corp.*. No. 3:11-CV-00386-H, 2012 WL 694037, at *2 (W.D. Ky. Mar. 1, 2012).

## III.    Plaintiff's Motions Seeking Reissuance/Amendment of Summonses

Defendants Proctor, Garth and Thomas argued alternatively in their Motion to Dismiss

that Plaintiff's federal claims should be dismissed pursuant to Federal Rule 12(b)(5) for failing to

serve process. [R. 20 pp. 8–9]  It is the Plaintiff's burden to perfect service of process and show

that proper service was made. *Sawyer v. Lexington Fayette Urban Cty. Gov't*, 18 F. App'x. 285,

287 (6th Cir. 2001).  Federal Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Plaintiff did not serve the Defendants within 90 days of filing her Complaint.[4]  In response,

Plaintiff filed a Motion Seeking Reissuance/Amendment of Summonses previously issued to

Defendants Elton Amos, Kristie Proctor, Janice Garth, and Sheridan Thomas. [R. 41]  She

likewise filed a second Motion Seeking Reissuance/Amendment of Summons previously issued

to Defendants John Tilley, Aaron Smith, Kentucky State Reformatory, and Jahrell Johnson. [R.

42]

---

[4] Plaintiff attempted to serve Defendants Proctor, Garth, and Thomas by mailing a summons and a copy of the
Complaint to KSR, their "last known place of employment" on October 9, 2019, but "personal delivery could not be
verified." [R. 18 ¶ 9]  Federal Rule 4(e) allows a plaintiff to serve an individual defendant by (1) following state
law, or (2) doing any of the following: (a) serving the defendant in person; (b) leaving a copy of the summons and
complaint at the defendant's dwelling or usual place of abode with someone of suitable age and discretion who
resides there; or (c) delivering a copy of the summons and complaint to an agent authorized by appointment or law
to receive service of process. Fed. R. Civ. P. 4(e).  Kentucky law allows for personal service or service upon an
authorized agent. Ky. CR 4.04(2).

Kentucky federal courts trend toward allowing plaintiffs to correct service defects before resorting to the harsh remedy of dismissal. *See Carver v. Houchens Food Group, Inc.*, No. 1:19-CV-00099-GNS-HBB, 2020 WL 2203842, at *4 (W.D. Ky. May 6, 2020). If Plaintiff shows good cause for failing to serve the Defendants, the Court *must* grant an extension. In the absence of showing good cause, the Court may nevertheless grant a discretionary extension to complete service. *Bradford v. Bracken Cty.*, 767 F. Supp. 2d 740, 753 (E.D. Ky. 2011) (citing *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000)).

Establishing good cause "necessitates a demonstration of why service was not made within the time constraints." *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 521 (6th Cir. 2006) (quoting *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994)). The Sixth Circuit has held that good cause at least requires excusable neglect. *Bradford*, 767 F. Supp. 2d at 753–54 (citing *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000)). "The determination of whether a case of neglect was excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005); *see also Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241–42 (E.D. Ky. 2018) (characterizing the standard as "elastic"). The standard governing excusable neglect is a balancing of five different factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger*, 467 F.3d at 522.

Plaintiff argues that good cause exists for her failure to effectuate service. [R. 33 pp. 2–4; R. 41 p. 1; R. 42 p. 2] Plaintiff claims that she was unaware that her previous counsel failed to cause summons to be issued or to serve the Defendants in this case. [R. 33 p. 3] The Court

20

previously admonished Plaintiff's former counsel for this conduct [R. 7 p. 2], and found that former counsel's conduct justified finding excusable neglect, and thus good cause, for Plaintiff's failure to respond to Defendants Motions to Dismiss. [R. 30]  With respect to the Motions Seeking Reissuance/Amendment of Summons, the analysis is exactly the same except the delay is longer and the degree of *potential* prejudice Defendants could suffer is greater.  However, Defendants do not articulate with any specificity how they have been prejudiced by the improper service.  Further, Defendants clearly received notice, given their Motion to Dismiss.[5]  This alone does not justify a contrary finding with respect to excusable neglect to the one the Court previously made. *See* [R. 30]

Moreover, as mentioned in the Court's Rule 15 analysis, allowing Plaintiff an opportunity to serve the Defendants will have a minimal impact on the judicial proceedings.  Although fifteen months have passed since the original service deadline, no discovery has taken place, and the Court has not even entered a scheduling order.  Plaintiff's reason for this delay, as previously discussed, was that her former attorney failed to effectuate service without her knowledge and failed to inform her of the Court's orders or his inaction. *See* [R. 30; 33; 41; 42]  Upon learning of her counsel's inaction, Plaintiff retained her current counsel and has attempted to remedy those deficiencies. *See* [R. 23; 24; 29; 30]  Finally, there is no evidence of bad faith on Plaintiff's part.  Therefore, as with her Motion Seeking Extension of Time to Respond to Motions to

---

[5] Although Defendants Proctor, Garth, and Thomas clearly received notice in this case, it is less clear whether the remaining unserved defendants have received notice of this action, and if so, to what extent.  According to the proof of service filed by Plaintiff's former counsel [R. 18], Plaintiff served Defendant John C. Tilley at his place of employment, unsuccessfully attempted to serve Defendants Aaron Smith and Jahrell Johnson at KSR, and served Defendant KSR through the Kentucky Office of Attorney General (all by certified mail). [R. 42 p. 2]  Plaintiff attempted to serve Defendant Dr. Elton Amos through certified mail but did not receive a return receipt for Defendant Amos. [R. 41 p. 2]  Regardless, the Court will exercise its discretion as discussed below to allow re-issuance of summons.

Dismiss [R. 24], the Court finds Plaintiff has shown good cause for failing to serve Defendants Proctor, Garth, and Thomas.

Even if a plaintiff fails to show good cause, the Court retains discretion to allow late service. *Stewart v. Tenn. Valley Auth.*, 238 F.3d 424 (6th Cir. 2000) (table) (citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Among the factors courts have considered when determining whether to grant a discretionary extension are: (1) whether the plaintiff's claims would be barred by the statute of limitations if dismissed; (2) whether the defendant(s) had notice so they were not unfairly surprised by the lawsuit; and (3) whether an extension of time would serve the policy of resolving disputes on their merits. *See Turner v. Kentucky Transp. Cabinet*, No. 3:10–39–DCR, 2010 WL 5014516, at *3 (E.D. Ky. Dec. 3, 2010) (citing *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000)).

All these factors weigh in favor of allowing Plaintiff a brief extension to effectuate service. If the Court were to dismiss Plaintiff's claims without prejudice for failing to serve process this would effectively be a dismissal *with* prejudice given that the statute of limitations would have expired. Defendants Proctor, Garth, and Thomas all clearly received notice of Plaintiff's claims given that they filed a Motion to Dismiss. Finally, allowing Plaintiff to serve the Defendants allows her claims to be determined on their merits. Therefore, even if Plaintiff had not made a showing of excusable neglect and good cause, under the circumstances of this case, the Court exercises its discretion to allow Plaintiff a 30-day extension to serve Defendants in a manner that complies with Rule 4 of the Federal Rules.

**IT IS HEREBY ORDERED** as follows:

1.  Plaintiff's Motion Seeking Leave to File Amended Complaint **[R. 32]** is **GRANTED in PART and DENIED in PART**. Specifically, Plaintiff's Motion is **DENIED**

with respect to her state law claims and § 1983 claims against officers in their official capacity, which are **DISMISSED**.

      2.      Defendants' Motions to Dismiss **[R. 11; 20; 21]** are **DENIED as MOOT**.

      3.      Plaintiff is **ORDERED** to file an Amended Compliant consistent with the above ruling **within fourteen (14) days of this Order**.

      4.      Plaintiff's Motions Seeking Reissuance/Amendment of Summons **[R. 41, R. 42]** are **GRANTED**.  Plaintiff shall have 30 days after the date of the filing of the new Amended Complaint to serve the remaining Defendants in this case.

This the 8th day of June, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

23