UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

|  |  |  |
|---|---|---|
| DAWN CRAWFORD, in her capacity as<br>Administratrix of the Estate of MARC<br>CRAWFORD, | )<br>)<br>)<br>) | Civil Action No. 5:18-cv-623-CHB |
| Plaintiff, | )<br>) |  |
| v. | )<br>) | **MEMORANDUM OPINION AND<br>ORDER** |
| JOHN TILLEY, et al., | )<br>) |  |
| Defendants. | )<br>) |  |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Strike Plaintiff's Amended Complaint filed by Defendants Correct Care Solutions, LLC, Kirstie Proctor, Janice Garth, and Sheridan Thomas [R. 46] and Defendant James Erwin's Motion to Dismiss the Amended Complaint [R. 51]. Plaintiff has responded in opposition to both motions, [R. 52, R. 53], and Defendants replied [R. 57, R. 58]. The matter is fully briefed. For the reasons set forth herein, the Court will deny the Motion to Strike [R. 46] and will grant in part and deny in part the Motion to Dismiss [R. 51].

I. **BACKGROUND**

A. **Procedural Background**

Plaintiff Dawn Crawford, in her capacity as Adminstratrix of the estate of her late husband, Marc Crawford, filed this action on November 26, 2018. [R. 1] In her Complaint, Plaintiff alleged that her husband's death while in custody at the Kentucky State Reformatory ("KSR") resulted from the defendants' negligence, deliberate indifference to his medical needs, and/or failure to intervene. She named the following defendants: KSR; the Madison County

- 1 -

Detention Center ("MCDC"); Southern Health Partners, Inc. (a contracted healthcare provider for MCDC); Correct Care Solutions, LLC (a contracted healthcare provider for KSR); John Tilley (the Secretary of the Justice and Public Safety Cabinet); James Erwin (the Commissioner of the Kentucky Department of Corrections); Doug Thomas (the Madison County Jailer); Nolan Winkler (the Madison County Assistant Jailer); Sid Fitch (the Medical Director at MCDC); Roy Washington (an APRN at MCDC); Kayla Frye (a nurse at MCDC); Tom Jones (a correctional officer at MCDC); Aaron Smith (the former Warden of KSR); Dr. Elton Amos (the Northern Kentucky Region Medical Director for Defendant Correct Care Solutions, LLC); Kirstie Proctor (a nurse at KSR); Jahrell Johnson (a correctional officer and the Nursing Care Facility Supervisor at KSR); Janice Garth (an APRN at KSR); and Sheridan Thomas (a medical provider at KSR). All individual defendants were named in their official and individual capacities. In that original Complaint, Plaintiff asserted claims of wrongful death, negligence, and negligence per se against all defendants; a 42 U.S.C. § 1983 claim against all defendants; and a § 1983 claim against Defendants Tilley, Erwin, Thomas, Fitch, Smith, Amos, and Johnson.

Several defendants filed motions to dismiss. [R. 11, R. 20, R. 21] Plaintiff failed to timely respond to any of these motions, but eventually secured new counsel and was granted additional time to respond. [R. 24, R. 30] Plaintiff then moved to amend her complaint [R. 32]. Her proposed amended complaint included the same state law claims contained in her first Complaint, as well as the same § 1983 claims, but she added additional facts and clarified the particular claims against each defendant. [R. 32-1] Defendants opposed Plaintiff's motion to amend, arguing that there had been undue delay and an amendment would unduly prejudice them. [R. 35, 37, 38] Defendants also argued that the amendment would be futile because some claims were time-barred and others could not survive a motion to dismiss. [R. 35, 37, 38]

The Court granted Plaintiff's motion to amend in part and allowed Plaintiff to file an amended complaint. [R. 43] Because Plaintiff was permitted to amend her complaint, the various motions to dismiss were denied as moot. *Id.* at 9 n.1. However, the Court did address the defendants' arguments in opposition to the motion to amend, including their arguments that amendment was futile. The Court ultimately denied Plaintiff's motion to the extent she sought to include her state law claims (wrongful death, negligence, and negligence per se) because such claims were barred by the statute of limitations. *Id.* at 10–11. The Court further held that the § 1983 claims were *not* time-barred and permitted Plaintiff to include such claims in her amended complaint. *Id.* at 11–12.  However, to the extent that Plaintiff sought to include any official-capacity § 1983 claims, the Court denied Plaintiff's motion to amend because such official-capacity claims could not survive a motion to dismiss. *Id.* at 13. The remaining § 1983 claims against the defendants in their individual capacities were sufficiently alleged and could survive a motion to dismiss. *Id.* at 13–19. In reaching this conclusion, the Court found that Plaintiff alleged sufficient facts in support of her claim of supervisory liability against Defendant Erwin, *id.* at 15–17, and her claim of municipal liability against Correct Care Solutions, LLC. *Id.* at 17–19.

The Court therefore allowed Plaintiff to file an Amended Complaint that conformed to the Court's ruling. Thus, Plaintiff was permitted to amend her complaint, but she could not allege the state law claims or official-capacity § 1983 claims outlined in her proposed amended complaint.

### B.  The Amended Complaint

Plaintiff's Amended Complaint, [R. 44], alleges the following facts: On May 25, 2017, Marc Crawford, who suffered from lung cancer, was arrested and transported to the Madison

County Detention Center ("MCDC"). *Id.* ¶¶ 1, 59. At the time of Mr. Crawford's arrest, Plaintiff, his wife, informed the arresting officers that Mr. Crawford needed immediate medical attention. *Id.* ¶¶ 1, 60. The officers told Plaintiff that they would transport Mr. Crawford to the hospital, but they did not do so and instead took him to MCDC. *Id.* ¶¶ 2, 61–62.

Mr. Crawford had been arrested and housed at MCDC on one prior occasion in September 2016. *Id.* ¶ 53. During that time, he was placed in a restraint chair for hours, without justification, and urinated on himself twice while restrained. *Id.* ¶ 54. After he was released, he attempted to obtain video footage and records of the abusive incident, but MCDC did not provide the records, even after Mr. Crawford filed a Kentucky Open Records Act request. *Id.* ¶¶ 56–58.

After his 2017 arrest, Mr. Crawford was housed at MCDC for several days, during which time he did not receive medical care for various issues, including a developing blood clot in his leg. *Id.* ¶¶ 2, 63.  He was held in an isolation cell without justification; he missed his preexisting chemotherapy appointments; his pain medication patch was removed; and he was inappropriately given psychoactive medications. *Id.* ¶¶ 3, 63–67. He was also assaulted and tased by MCDC correctional officers on at least three occasions. *Id.* ¶¶ 4, 68. At least one of the attacks occurred in response to Mr. Crawford's repeated requests for his prescription medication. *Id.* ¶¶ 4, 69. The attacks caused Mr. Crawford to cough and vomit blood, but he was not treated for these injuries. *Id.* ¶ 74. After the attacks, the MCDC medical staff "falsified records and covered up the incidents." *Id.* ¶¶ 4, 70, 75.

On May 30, 2017, Defendant Jones, an MCDC correctional officer, twice requested that the MCDC medical staff attend to Mr. Crawford, but Jones was told that Mr. Crawford would not be transported to the hospital. *Id.* ¶ 82. The following day, May 31, 2017, Crawford was transported to Kentucky State Reformatory ("KSR").  *Id.* ¶¶ 5, 78. He presented with an elevated

heart rate, difficulty breathing, and a painfully swollen leg, but KSR medical staff refused to treat him, ignored his complaints, and refused to provide him with his prescribed medications and breathing treatments. *Id.* ¶¶ 5, 79–80, 86.  The medical staff also refused to provide Mr. Crawford with his chemotherapy treatments until June 20, 2017, at which time they scheduled an appointment with an oncologist for July 5, 2017. *Id.* ¶¶ 5, 81. Mr. Crawford passed away on June 24, 2017. *Id.* ¶¶ 6, 83.

Plaintiff obtained Mr. Crawford's medical records prior to initiating this suit, and alleges that said records demonstrate that Mr. Crawford "was a victim of a health care model utilized in Kentucky's correctional facilities that runs counter to national standards and falls far short of meeting inmates' critical medical needs." *Id.* ¶ 7. She alleges that Kentucky's Justice and Public Safety Cabinet ("Cabinet") and Department of Corrections ("DOC") and the private healthcare providers that they contract with, namely, Correct Care Solutions, LLC ("Correct Care") and Southern Health Partners, Inc. ("Southern Health"), utilize unconstitutional policies, practices, and customs that cause inmates like Mr. Crawford "to suffer constitutional deprivations in relation to the provision of health care services." *Id.* ¶ 8. These policies, practices, and customs include utilizing LPNs and APRNs with less experience and training than physicians, and a lack of supervision by medical directors. *Id.* ¶¶ 31–36. In developing and implementing these policies, neither MCDC, KSR, Southern Health, or Correct Care followed national health and safety guidelines. *Id.* ¶¶ 33–35.

To support the claims, Plaintiff references "[d]ozens of lawsuits filed in Kentucky state and federal courts by the families of inmates who have died while incarcerated as a result of unconstitutional medical treatment, policies, and practices." *Id.* ¶ 38. Plaintiff also cites to an article from CNN, which investigated Correct Care's "egregious practices," *id.* ¶ 46, as detailed

- 5 -

in various lawsuits filed between 2014 and 2018. *Id.* ¶¶ 50–51. The doctors who reviewed inmate records for CNN's investigation concluded that "serious outcomes could have been avoided and inmates could have lived had Correct Care provided proper care." *Id.* ¶ 52. Plaintiff alleges that through these various lawsuits, investigations, and complaints, as well as the "obviousness of the problems," the defendants knew "that Kentucky's system of supervising and caring for inmates with serious health problems was dangerously deficient. Yet, in deliberate indifference to the health and safety of inmates like Mr. Crawford, these Defendants failed to alleviate the known and/or obvious risks." *Id.* ¶ 100.

Based on these alleged facts, in Count I Plaintiff asserts a claim of deliberate indifference to a serious medical and/or mental health need in violation of the Eighth Amendment and 42 U.S.C. § 1983 (against all defendants); in Count II she alleges a claim of failure to intervene or failure to protect in violation of 42 U.S.C. § 1983 (against all defendants); in Count III she asserts a claim of supervisory liability under 42 U.S.C. § 1983 (against Defendants Tilley, Erwin, Thomas, Winkler, Amos, Johnson, Fitch, and Smith, in their individual capacities); and in Count IV she brings a claim of municipal liability under 42 U.S.C. § 1983 (against Defendants Correct Care and Southern Health).

Defendants Correct Care Solutions, Garth, Proctor, and Smith filed a Motion to Strike Plaintiff's Amended Complaint [R. 46]. These defendants argue that the Amended Complaint included "redundant, immaterial, impertinent or scandalous matter" under Federal Rule of Civil Procedure 12(f). Defendant Erwin followed with a Motion to Dismiss the Amended Complaint, arguing that the claims against him are barred by the doctrine of qualified immunity and all of Plaintiff's claims are otherwise barred by the statute of limitations. [R. 51] The Court addresses each motion in turn.

## II. ANALYSIS

### A. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This rule reinforces the requirement of Rule 8(d) that pleadings be "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d). An additional purpose of the rule "is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). Rule 12(f) motions to strike "are viewed with disfavor and are not frequently granted." *Id.* (citations omitted). They are generally viewed with disfavor because such relief "is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted) (internal quotation marks omitted).

A motion to strike "admits the well-pleaded allegations of the pleading asked to be stricken." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 821 (6th Cir. 1953) (citation omitted). The lack of a factual record presents a "practical difficulty," however, and as a result, "the action of striking a pleading should be sparingly used by the courts." *Id.* at 822 (citation omitted). It is a "drastic remedy to be resorted to only when required for the purposes of justice" and "when the pleading to be stricken has no possible relation to the controversy." *Id.* (citations omitted); *see also Overnight Transp. Co. v. International Bhd. of Teamsters*, 168 F.Supp.2d 826, 850 (W.D. Tenn. 2001) ("Motions to strike are disfavored remedies to be used sparingly only when the ends of justice requires it." (citation omitted)). Generally, motions to strike "will be denied unless the allegations have 'no possible relation or

logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Mayes v. Envtl. Prot. Agency*, No. 3:05-cv-478, 2006 WL 2709237, *4 (E.D. Tenn. Sept. 20, 2006) (quoting Charles A. Wright & Arthur R. Miller, 5C Federal Practice & Procedure § 1382 (3d ed. 2004)). Such motions may be appropriate, however, when a complaint contains "numerous immaterial, impertinent, or scandalous statements designed to improperly elicit sympathy, to curry favor, or to cast aspersions on the defendants." *Everage v. Ford Motor Co.*, No. Civ. 04-549-KKC, 2005 WL 1176095, at *3 (E.D. Ky. May 12, 2005), *report and recommendation adopted*, No. Civ.A.04-CV-549 KKC, 2005 WL 2365267 (E.D. Ky. Sept. 14, 2005). However, "[c]ourts have generally decided to strike portions of a pleading for being impertinent or scandalous only where the language is extreme or offensive." *Thompson v. Hartford Life and Acc. Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010) (citations omitted). The Court has "considerable discretion" in deciding whether to strike pleadings or portions thereof under Rule 12(f). *Id.* (citations omitted).

In the present case, Defendants ask the Court to strike Plaintiff's Amended Complaint, [R. 44], in full. Citing specifically to paragraphs 32[1] and 45–52[2], Defendants argue that

> Plaintiff seeks to impugn the Defendants with generalizations lacking specific factual allegations [¶¶ 32, 45, 48, 49, 50, 52], references to unnamed or unidentified facilities that are not parties to this action [¶¶ 32, 47, 48, 49, 50, 51, 52], references to unnamed or unidentified individuals who are not parties to this action [¶¶ 32, 45, 47, 48, 49, 50, 51, 52], references to a media story about allegedly deficient care provided in other states, at other facilities, by other individuals who are not parties to this action [¶¶ 46, 47, 48, 49, 50, 51, 52], and references to unnamed and

---

[1] Paragraph 32 states, "Meanwhile, the jails' medical directors bank six-figure incomes while serving largely as figureheads, providing the appearance of credibility but little or no regular care for inmates and rendering minimal supervision of those who do."

[2] Paragraph 45 describes Southern Health and Correct Care as "significant players in the Kentucky political arena" and describes their political activities, such as joining certain organizations, attending conferences, and contributing to Kentucky political candidates. Paragraph 45 further states, "Upon information and belief, these activities directly and negatively influence oversight of these entities by government departments and officials." Paragraphs 46–52 reference the CNN article and investigation and the other lawsuits referenced above.

unidentified lawsuits that may, or may not, be pending and the merits of which are unsupported by specific factual allegations. [¶¶ 50, 51, 52.]

[R. 46, p. 5]  Defendants further argue that Plaintiff "has not plausibly alleged" any factual connection to the CNN articles and the other lawsuits referenced in these paragraphs; any facts or legal rulings from those lawsuits that might affect this case; any connection between the CNN report and this case; or any "factual evidence upon which the generalizations expressed in the Amended Complaint are based." *Id.*

Though Defendants cite to these eight paragraphs (out of the Amended Complaint's 128 paragraphs), they seek to strike the Amended Complaint in its entirety. The Court finds such a remedy would not serve the purposes of justice when only eight paragraphs (of 128) have been cited as containing "redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f). Furthermore, the Court has already reviewed Plaintiff's § 1983 claims and found that the allegations are sufficiently pleaded and state a plausible claim for relief. [R. 43, pp. 12–19] Accordingly, the Court will not strike the Amended Complaint in full as requested by Defendants.  Instead, the Court will consider whether it should strike any of the eight cited paragraphs.

On this point, the Court finds *Everage v. Ford Motor Co.*, cited by Defendants, to be distinguishable. In that case, the pro se plaintiff filed a civil action alleging her dissatisfaction with a truck that she purchased from a Ford dealership. 2005 WL 1176095, *1. The Magistrate Judge issued a report and recommendation, which was adopted by the District Court Judge, in which he found that the plaintiff's complaint and other pleadings contained "numerous immaterial, impertinent, or scandalous statements designed to improperly elicit sympathy, to curry favor, or to cast aspersions on the defendants." *Id.* at *3. For example, the plaintiff detailed her Native American and British ancestry, sought sympathy by stating that she was the wife of a

military officer and that her son was battling cancer, and melodramatically declared that the defendants' "injurious and disgraceful business dealings cry out for justice just as Plaintiff has cried out in pain with bloody and swollen feet." *Id.* The Magistrate Judge found, and the District Court Judge agreed, that "[s]uch statements have no bearing on this case and certainly qualify as 'immaterial, impertinent, or scandalous matter' for purposes of Rule 12. These statements should be stricken from the complaint." *Id.*

The challenged allegations in this case are distinguishable from those in *Everage*. In that case, the stricken statements—regarding the plaintiff's ancestry, her husband's status in the military, her son's battle with cancer, and her "bloody and swollen feet"—were clearly designed to import sympathy for the plaintiff and had no relation to her claims against the Ford dealership. In the present case, the plaintiff's references to the CNN investigation and similar lawsuits (paragraphs 46–52), if accepted as true for purposes of this motion, support Plaintiff's claims that there existed a policy and practice of depriving inmates of medical care and that defendants were aware of these policies and practices and failed to rectify the situation. Similarly, paragraph 45, if accepted as true, suggests a political motivation for the defendants' behavior and further supports Plaintiff's contention that the deprivation of medical care was a systemic problem and that the deliberate indifference of defendants was just that—deliberate. Lastly, paragraph 44, which references the salaries of the medical directors at the jails and describes the medical directors as "figureheads" is directly related to Plaintiff's claims of lack of supervision from the medical directors and physicians. While the Court acknowledges that some of these allegations are dramatically worded, the Court cannot say that these allegations are "immaterial, impertinent, or scandalous statements designed to improperly elicit sympathy, to curry favor, or to cast aspersions on the defendants." *Everage*, 2005 WL 1176095, at *3. Accordingly, the Court finds

that this case is distinguishable from *Everage*, and the statements in this case should not be stricken under Rule 12(f).

Defendants do not cite to any other case law from the Sixth Circuit to support their Motion to Strike. In their reply to Plaintiff's response, they cite to a case from the District of Oregon for the proposition that "more than the vague, conclusory assertions of relatedness proffered by Plaintiff are required to justify the inclusion of allegations of unidentified lawsuits in foreign jurisdictions involving other parties, as has been done here." [R. 57, p. 2 (citing *Gillete v. Malheur County*, No. 2:14-CV-01542-SU, 2015 WL 2365405, *3 (D. Or. May 15, 2015)]. In that case, the Court dismissed the plaintiff's complaint on Rule 8 grounds because it was "so verbose, confused and redundant that its true substance, if any, is well disguised." *Gillete*, 2015 WL 2365405, * 2 (citations omitted). The Court expressly declined to rule on the defendants' motions to strike because the dismissal on Rule 8 grounds rendered the motion moot. *Id.* at *3 n.8.  However, the Court noted in a footnote that the motions "appear well-taken," referencing one motion to strike a single paragraph that "describe[d] unrelated lawsuits and instances of alleged misconduct" and another motion to strike a newspaper article that a plaintiff had published. *Id.*  The Court went on to note that "[i]n the complaint as written, plaintiffs fail to establish any meaningful connection between their claims and all of these allegations and exhibits. In their amended complaint, plaintiffs should either remove this material or clearly link it to the legal theory of their case." *Id.*

The Court does not find this case to be supportive of Defendants' Motion to Strike. First, as the defendants admit, the above-cited language is mere dicta contained within a footnote and refers to motions that the Court dismissed as moot. Second, the Court suggests that the descriptions of unrelated lawsuits and alleged misconduct could be included in the plaintiffs'

amended complaint, so long as the plaintiffs "clearly link[ed] it to the legal theory of their case." *Id.* As noted above, the eight paragraphs at issue here are at least tenuously linked to the legal theory of Plaintiff's case.

While Plaintiff may have alleged more facts than necessary to satisfy Rule 8, "the inclusion of more facts than needed to state a claim is not grounds to grant a motion to strike." *Blevins v. Piatt*, No. ELH-15-1551, 2015 WL 7878504, *6 (D. Md. Dec. 4, 2015) (citations omitted). Further, "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." Wright and Miller, 5C Federal Practice and Procedure, §1382. In this case, the eight cited paragraphs may offend the sensibilities of the defendants, but they do not contain language so "extreme or offensive" as to qualify as impertinent or scandalous. *Thompson*, 270 F.R.D. at 279. These allegations have some "possible relation or logical connection to the subject matter of the controversy," and Defendants have not demonstrated that inclusion of these paragraphs will "cause some form of significant prejudice." *See Mayes*, 2006 WL 2709237, at *4. It would therefore be inappropriate to strike them from the Amended Complaint.

As noted above, striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice" and "when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson*, 201 F.2d at 822 (citations omitted). Defendants have not demonstrated that this "drastic remedy" should be utilized in this case, nor have they demonstrated that the eight cited paragraphs will cause any "significant prejudice." *Mayes*, 2006 WL 2709237, at *4. The allegations at issue—i.e, the contents of the eight cited paragraphs—appear relevant to Plaintiff's claims and are not "immaterial, impertinent, or

scandalous matter" under Rule 12(f). Accordingly, the Court will deny Defendant's Motion to Strike, [R. 46].

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" so long as the complaint's factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The process of determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

It is important to note that the factual allegations contained in the Amended Complaint, [R. 44], are virtually identical to the factual allegations alleged in the proposed amended complaint attached to Plaintiff's Motion to Amend, [R. 32-1]. The Court previously considered whether such allegations could survive a motion to dismiss when it ruled on Plaintiff's Motion to Amend. In that opinion, the Court expressly considered whether it would be futile to allow Plaintiff to file her proposed amended complaint—which is nearly identical to the present Amended Complaint.  That analysis required the Court to consider whether the allegations in the proposed amended complaint could survive a Rule 12(b)(6) motion to dismiss. As noted above, the Court (based on a cursory review) held that the § 1983 claims (excluding the official capacity claims) could survive a motion to dismiss and allowed the Plaintiff to file an amended complaint. Defendant now challenges that decision by filing a Motion to Dismiss the Amended Complaint, arguing that these claims are barred by the doctrine of qualified immunity or otherwise by the statute of limitations. [R. 51] Essentially, Defendant asks this Court to reconsider its prior ruling on whether these § 1983 claims could survive a motion to dismiss.  The Court again addresses these arguments.

### i. Qualified Immunity

In his first Motion to Dismiss, Defendant Erwin argued that the original Complaint should be dismissed under Rule 12(b)(6) because the Complaint failed to allege sufficient facts to state a plausible claim against him. [R. 21, pp. 5–12]  He made the same argument in his response to Plaintiff's Motion to Amend and claimed that he was entitled to qualified immunity. [R. 38, pp. 6 n.3, 11–12]  The Court addressed these arguments in its June 8, 2020 Memorandum Opinion and Order and found that Plaintiff had alleged sufficient facts to survive a motion to dismiss. [R. 43, pp. 16–17]. The Court also noted that generally it was inappropriate to grant a

12(b)(6) motion to dismiss on the basis of qualified immunity, and the question of qualified immunity was therefore premature. *Id.* (citations omitted).

In his present Motion to Dismiss, Erwin again argues that Plaintiff's claims against him are barred by the doctrine of qualified immunity. [R. 51, pp. 8–9]  More specifically, he argues that Plaintiff's Amended Complaint does not allege any facts that plausibly state a constitutional violation, and Plaintiff cannot establish that Erwin violated any clearly established constitutional rights. *Id.* at 9–18. In response, Plaintiff argues that her "Amended Complaint plausibly alleges that the Defendants, including Erwin, through a theory of supervisory liability, acted with deliberate indifference to Mr. Crawford's serious medical needs in violation of the Eight Amendment," thereby stating a plausible constitutional violation. [R. 53, p. 7] She also argued that the right to adequate medical treatment is a well-established constitutional right. *Id.* Thus, she argued, "Defendant Erwin is not, at this stage of the litigation, entitled to qualified immunity on Plaintiff's supervisory liability claim." *Id.* at 7–8. Notably, Plaintiff's response only addressed her supervisory liability claim (Count III) against Erwin and made no mention of facts or arguments supporting Counts I and II against Erwin. The Court agrees with Erwin that Plaintiff has waived any argument that she stated a claim against Erwin in Counts I and II. [R. 58, p.  14] With respect to Count III, the supervisory liability claim, for largely the same reasons stated in its previous Memorandum Opinion and Order, the Court will deny Erwin's Motion to Dismiss.

As the Court previously explained in its prior decision, qualified immunity protects government officials performing discretionary functions from civil liability so long as their actions do not violate any "clearly established statutory or constitutional rights that a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government official is entitled to qualified immunity, the Court must

consider the following questions: (1) "viewing the facts in the light most favorable to the

plaintiff, do the facts alleged show that the officer's conduct violated a constitutional right?" and

(2) "was the right clearly established at the time of the violation?" *Peatross v. City of Memphis*,

818 F.3d 233, 240 (6th Cir. 2016) (internal quotation marks omitted).

In its June 8, 2020 Memorandum Opinion and Order, the Court explained, "A cursory

review of Plaintiff's Amended Complaint reveals sufficient facts to state a plausible claim of

supervisory liability against Defendant Erwin, and to show that qualified immunity is not

appropriate at this stage." [R. 43, p. 16] The Court pointed to the following facts, as alleged in

Plaintiff's proposed amended complaint: Erwin helped promulgate the policies, practices,

procedures, and customs for the Kentucky DOC, including staffing decisions. *Id.* at 16–17 (citing

R. 32-1 ¶¶ 12, 22, 29–52, 97–101). These policies, which were endorsed by Erwin, caused a

systemic failure to provide constitutionally adequate healthcare for inmates like Mr. Crawford.

*Id.* at 17 (citing R. 32-1 ¶¶ 100, 101, 116–123). Plaintiff plausibly alleged that Erwin was aware

that the policies resulted in constitutionally deficient care, but he did nothing to correct them, and

he knowingly acquiesced to the unconstitutional conduct of his subordinates. *Id.* She further

alleged that Erwin made the decision to accept Mr. Crawford into KSR and that Erwin would

have been aware of Mr. Crawford's medical conditions. [R. 32-1, ¶ 97] This alleged behavior

(and failure to act) resulted in a violation of Mr. Crawford's Eighth Amendment rights, namely,

the right against deliberate indifference of his medical needs. [R. 43, p. 17] Based on these

allegations, the Court "[drew] the reasonable inference" that Erwin is liable for the alleged

misconduct. *Id.* (quoting *Ashcroft*, 556 U.S. at 678).  The Court further noted that it is generally

inappropriate to grant a 12(b)(6) motion to dismiss on qualified immunity grounds. *Id.*

Plaintiff's Amended Complaint alleges these same facts, using identical language. [R. 44 ¶¶ 12, 22, 29–52, 97–101, 112–119] The Court views these facts in the light most favorable to Plaintiff and again finds that Plaintiff has sufficiently alleged facts to state a plausible claim for supervisory liability against Erwin. More specifically, the Court finds that Plaintiff has sufficiently alleged facts that can plausibly establish a constitutional violation under a theory of supervisory liability and that Erwin violated Mr. Crawford's clearly established constitutional rights. The facts—as alleged in the Amended Complaint and accepted as true for purposes of this motion—do not support dismissal under Rule 12(b)(6) on qualified immunity grounds with respect to Count III. Furthermore, the Court is mindful that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Buddenberg v. Weisdack*, 939 F.3d 732, 738–39 (6th Cir. 2019) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)) (internal quotation marks omitted).

The Court is also mindful that, in the context of § 1983 claims, supervisory liability may be described as a misnomer of sorts. *Ashcraft*, 556 U.S. at 677. In such claims, an official is only responsible for his or her own conduct, and *respondeat superior* is not a possible theory of liability. *Id.*; *Polk Cnty. v. Dodson*, 454 U.S. 312, 325–26 (1981). As a result, that official's supervisory capacity, without more, is insufficient to support a § 1983 supervisory liability claim against that official. *Peatross*, 818 F.2d at 243 (citation omitted). Instead, he or she must "either encourage[] the specific incident of misconduct or in some other way directly participate[] in it." *Id.* (citation omitted). The Sixth Circuit has interpreted this "to mean that 'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Taylor v. Michigan Dept. of Corrections*,

- 17 -

69 F.3d 76, 80–81 (6th Cir. 1995) (explaining circumstances under which a supervisor can incur liability under § 1983).

In this case, Plaintiff relies on more than just a superficial reference to Erwin's supervisory capacity to support Count III. In other words, she does not merely allege that Erwin had supervisory responsibilities over the medical professionals that provided (or failed to provide) Mr. Crawford with medical care. Rather, as noted above, she alleges that Erwin helped promulgate the policies for the Kentucky DOC, and he endorsed the very policies that resulted in a systemic failure to provide adequate healthcare. She alleges that Erwin was aware of this systemic failure and inadequate healthcare, but he did nothing to correct it. She also alleges that Erwin personally made the decision to accept Mr. Crawford at KSR, and he knew of Mr. Crawford's medical issues. Plaintiff therefore alleges that Erwin has some personal knowledge of and/or involvement in the alleged unconstitutional conduct—namely, the deliberate indifference to Mr. Crawford's medical needs—because he "implicitly authorized, approved, or knowingly acquiesced in" it. *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d at 300); *see also Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) (explaining that defendant could be held liable in his supervisory capacity where he abandoned his specific job duties "in the face of actual knowledge of a breakdown in the proper workings of the department"). At this juncture of the case, the Court must accept the allegations in the Amended Complaint as true and draw all reasonable inferences in favor of the plaintiff. Of course, this ruling has no bearing on the ultimate merits of Plaintiff's claims against Mr. Erwin. But Plaintiff has done enough to survive a 12(b)(6) motion, especially in light of the Sixth Circuit's guidance that granting a 12(b)(6) motion based on qualified immunity is disfavored at this stage.

- 18 -

Accordingly, the Court will grant Erwin's Motion to Dismiss the Amended Complaint with respect to Counts I and II and will deny the motion with respect to Count III.

### ii. Statute of Limitations

In his first Motion to Dismiss, Defendant Erwin argued that each of Plaintiff's claims, as set forth in her original complaint, were time-barred. [R. 21, pp. 12–13] When Plaintiff moved to amend her complaint, Defendant Erwin objected, arguing that amendment would be futile because the claims were each barred by their respective statutes of limitations. [R. 38, pp. 4–5]

The Court addressed the timelines of Plaintiff's claims, as set forth in her proposed amended complaint, [R. 32-1], and ultimately found that the state law claims were barred by the relevant statute of limitations. [R. 43, pp. 10–11] The Court explained that the state law claims were subject to the one-year statute of limitations in KRS § 413.140(1)(a). *Id.* at 10. That one-year period began to run on November 22, 2017, the day that Plaintiff was appointed as the personal representative of Mr. Crawford's estate. *Id.* Thus, the question was whether Plaintiff's state law claims had "commenced" on or before November 22, 2018. *Id.* The Court, looking to Kentucky law, found that Plaintiff's claims did not commence until the summons were issued on September 20, 2019, long after the one-year statute of limitations had expired. *Id.* at 10–11. Accordingly, the Court found that Plaintiff's state law claims were time-barred and, as a result, amendment would be futile. *Id.* at 11.

The Court then turned to Plaintiff's federal § 1983 claims. *Id.* at 11–12. Kentucky's one-year statute of limitations also applied to these claims, so the Court again considered whether these claims "commenced" on or before November 22, 2018. *Id.* However, unlike the state law claims, these federal claims are governed by Federal Rule of Civil Procedure 3, which provides that "[a] civil action is commenced by filing a complaint with the court." *Id.* at 12. Plaintiff did

not file her original complaint until November 26, 2018, but argued that it was timely filed because Thursday, November 22, 2018 was a holiday (Thanksgiving), and the Friday after Thanksgiving was also a holiday, thereby giving her until Monday, November 26, 2018 to file her complaint. *Id.* The Court agreed. Citing to https://personnel.ky.gov/Pages/Leave.aspx, the Court found that Kentucky defines the Friday after Thanksgiving as a holiday. *Id.* Under Federal Rule of Civil Procedure 6(a), a deadline that ends on a "Saturday, Sunday, or legal holiday . . . continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *Id.* Because the day after Thanksgiving qualified as a legal holiday under that rule, the Court found that Plaintiff's statute of limitations continued to run through November 26, 2020, and her federal claims were therefore not time-barred. *Id.*

Defendant Erwin challenges the Court's characterization of the Friday after Thanksgiving as a "legal holiday." He is therefore utilizing his Motion to Dismiss as a motion to reconsider the Court's previous ruling. While the Court finds it inappropriate to utilize a Rule 12(b)(6) motion in this manner, it will nevertheless consider the merits of Erwin's argument.

As noted above, Rule 6 describes how to compute periods of time, like statutes of limitations or similar filing deadlines. It provides that, "[w]hen the period is stated in days or a longer unit of time," one must count every day, including Saturdays, Sundays, and legal holidays, but, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1). As defined by Rule 6(a)(6), a "legal holiday" includes Thanksgiving Day, "any day declared a holiday by the President or Congress," and "for periods that are measured after an event, any other day declared a holiday by the state where the district court is located."

- 20 -

In this case, Erwin does not dispute that Thanksgiving Day is a legal holiday under Rule 6, but he disagrees with the Court's previous ruling that the Friday after Thanksgiving qualifies as a legal holiday. He argues that a date can only qualify as a legal holiday under Rule 6(a)(6)(C) if it also qualifies as a legal holiday under Kentucky law.  He argues that the day after Thanksgiving is a *personnel* holiday in Kentucky under KRS § 18A.190, but not a *legal* holiday. Citing to *Wilkins v. Kentucky Retirement Systems Board of Trustees*, 276 S.W.3d 812 (Ky. 2009), he asserts that Kentucky's legal holidays are set forth in KRS § 2.110, which enumerates certain public holidays. The day after Thanksgiving is not a holiday listed in the statute. Instead, it is listed as a holiday for state personnel (i.e., a day when state offices are closed and state employees are given a day off) under KRS § 18A.190. Erwin argues that the date must be listed in KRS § 2.110 to qualify as a legal holiday under Rule 6.

The Court disagrees.  A legal holiday is defined by Rule 6 and includes "any other day declared a holiday by the state where the district court is located." The rule does not specify that the state holiday must be a legal holiday within that state; it only requires that the day be "declared a holiday by the state." In this case, then, any day that the Commonwealth of Kentucky has declared a holiday—legal or not—qualifies as a legal holiday under the rule. *See Dwyer v. Duffy*, 426 F.3d 1041, 1044 (9th Cir. 2005) (explaining that Bankruptcy Rule 9006, which was modeled after Rule 6, does not require the "day appointed as a holiday. . . by the state" to be a legal holiday and California's "judicial holidays" therefore qualified).

As the Court has previously explained, the day after Thanksgiving is a holiday in Kentucky. This conclusion is affirmed by Erwin's own citation to KRS § 18A.190, which provides that "[s]tate offices shall be closed and state employees shall be given a *holiday* on the following days," including "[t]he fourth Thursday in November plus one (1) extra day."

(emphasis added).  As this statute makes clear, the Friday after Thanksgiving has been declared a holiday in the state of Kentucky. As a result, it qualifies as a legal holiday under Rule 6. Because it is a legal holiday under that rule, Plaintiff was not required to file her complaint on that date, but instead could file by "the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1). She therefore timely filed her original complaint on Monday, November 26, 2018.

Accordingly, the Court will deny Defendant Erwin's Motion to Dismiss to the extent he argues that Plaintiff's claims are time-barred.

## III.  CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Motion to Strike, [R. 46], and Defendant Erwin's Motion to Dismiss, [R. 51], is granted in part and denied in part. Accordingly,

**IT IS HEREBY ORDERED** as follows:

1.  The Motion to Strike Plaintiff's Amended Complaint filed by Defendants Correct Care Solutions, LLC, Kirstie Proctor, Janice Garth, and Sheridan Thomas [**R. 46**] is **DENIED**.

2.  Defendant James Erwin's Motion to Dismiss the Amended Complaint [**R. 51**] is **GRANTED IN PART** and **DENIED IN PART**.

    a.  The Motion is granted with respect to Counts I and II, and

    b.  The Motion is denied with respect to Count III.

This the 25th day of November, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY